UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

RICKY HOPSON,

                     Plaintiff,

        v.

NANCY A. BERRYHILL,[1] Commissioner of
  Social Security,

                     Defendant.

**DECISION
and
ORDER**

**17-CV-1191F**
(**consent**)

_____

APPEARANCES:              LAW OFFICES OF KENNETH HILLER, PLLC
                                   Attorneys for Plaintiff
                                   KENNETH R. HILLER and
                                   BRANDI CHRISTINE SMITH, of Counsel
                                   6000 North Bailey Avenue, Suite 1A
                                   Amherst, New York  14226

                                   JAMES P. KENNEDY, JR.
                                   UNITED STATES ATTORNEY
                                   Attorney for Defendant
                                   Federal Centre
                                   138 Delaware Avenue
                                   Buffalo, New York  14202
                                         and

                                   SERGEI ARDEN
                                   Special Assistant United States Attorney, of Counsel
                                   Social Security Administration
                                   Office of General Counsel
                                   26 Federal Plaza – Room 3904
                                   New York, New York  10278
                                         and
                                   LAURA RIDGELL BOLTZ
                                   Special Assistant United States Attorney, of Counsel
                                   Social Security Administration
                                   Office of General Counsel
                                   1961 Stout Street, Suite 4169
                                   Denver, Colorado  80294

---

[1] Nancy A. Berryhill became Acting Commissioner of the Social Security Administration on January 23, 2017.  Pursuant to Fed.R.Civ.P. 25(d), Berryhill is substituted for Carolyn W. Colvin as Defendant in this case.  No further action is required to continue this suit by reason of sentence one of 42 U.S.C. § 405(g).

## JURISDICTION

On June 19, 2018, the parties to this action, consented pursuant to 28 U.S.C. § 636(c) to proceed before the undersigned. (Dkt. 10). The matter is presently before the court on motions for judgment on the pleadings filed by Plaintiff on June 18, 2018 (Dkt. 9), and by Defendant on September 17, 2018 (Dkt. 14).

## BACKGROUND

Plaintiff Ricky Hopson ("Plaintiff"), brings this action under the Social Security Act ("the Act"), 42 U.S.C. § 405(g), seeking judicial review of the Commissioner of Social Security's final decision denying Plaintiff's application filed with the Social Security Administration ("SSA"), on October 16, 2008, for Social Security Disability Benefits under Title II of the Act ("SSDI"), and for Supplemental Security Income under Title XVI of the Act ("SSI") (together, "disability benefits"), alleging he became disabled on September 1, 2007, by depression, thyroid surgery, numbness in left fingers, shoulder problems, learning disability, blind in left eye, inability to stand for very long, inability to lift anything, and memory problems ("initial application"). AR[2] at 117-20, 130, 134. On March 16, 2009, Plaintiff's initial application was denied, AR at 78-89, and on March 25, 2009, Plaintiff requested a hearing before an administrative law judge. AR at 61-77. Because Plaintiff continued to engage in substantial gainful activity ("SGA"), Plaintiff later amended the disability onset date to July 24, 2009, the last date in which Plaintiff was engaged in SGA. AR at 33, 122. On October 21, 2010, a hearing ("the first administrative hearing"), was held in Buffalo, New York before administrative law judge

---

[2] References to "AR" are to the page of the Administrative Record electronically filed by Defendant on April 19, 2018, in 14 separate exhibits (Dkts. 7-1 through 7-14).

Timothy McGuan ("ALJ McGuan"). AR at 27-57. Appearing and testifying at the hearing were Plaintiff, with legal counsel Amanda Jordan, Esq., and vocational expert ("VE") Jay Steinbrenner ("VE Steinbrenner"). *Id.* On December 7, 2010, ALJ McGuan rendered his decision ("first ALJ decision"), denying the initial application. AR at 8-24. On February 7, 2011, Plaintiff requested review of the first ALJ decision by the Appeals Council. AR at 7. On June 4, 2012, the Appeals Council issued a decision denying Plaintiff's request for review. AR at 1-6.

On August 2, 2012, Plaintiff commenced an action in this court seeking review of the Commissioner's decision with the parties stipulating to remand the issue to the Commissioner for further administrative proceedings pursuant to the fourth sentence of 42 U.S.C. § 405(g). *See Hopson v. Colvin*, No. 12-CV-00731A(S), Stipulation (Dkt. 12) (W.D.N.Y. Apr. 15, 2013); AR at 718-27. On July 23, 2013, the Commissioner remanded the matter to ALJ McGuan with instructions to obtain additional evidence regarding Plaintiff's impairments, further evaluate Plaintiff's subjective complaints, give further consideration to the non-treating source opinions and to Plaintiff's maximum residual functional capacity ("RFC"), and to obtain supplemental evidence from a VE clarifying the effect of the assessed limitations on Plaintiff's occupational base. AR at 740-45. On January 15, 2014, another administrative hearing ("the second administrative hearing"), was held before ALJ McGuan, AR at 670-93, who, on May 8, 2014, rendered another unfavorable decision ("second ALJ decision"). AR at 746-66. Following administrative appeal the Appeals Council, on October 5, 2015, determined the second ALJ decision did not comply with the earlier remand order, vacated the second ALJ decision and remanded the matter to the ALJ with further instructions to

obtain further medical evidence clarifying the nature and severity of Plaintiff's impairments, evaluate Plaintiff's mental impairments, further consider Plaintiff's maximum RFC, and obtain additional evidence from the VE, and further instructions that the case be assigned to another administrative law judge. AR at 767-72.

Meanwhile, on May 16, 2011, Plaintiff filed a subsequent application for disability benefits ("the subsequent application"), asserting a disability onset date of January 1, 2011. AR at 899-911. Although the subsequent application was initially denied, Plaintiff pursued the application through another administrative hearing held June 18, 2013, following which the subsequent application was granted on June 25, 2013, AR at 728-39, with Plaintiff found disabled as of January 1, 2011. AR at 739, 746-66.

On August 11, 2016, a further administrative hearing ("the third administrative hearing"), was held on the initial application before ALJ Stephen Cordovani ("ALJ Cordovani"), in Buffalo, New York, at which Plaintiff did not appear, with Plaintiff's legal counsel Kelly Laga, Esq., and vocational expert Kenneth Browdie ("VE Browdie"), appearing and testifying on Plaintiff's behalf. AR at 649-67. On November 16, 2016, ALJ Cordovani rendered his decision with Plaintiff's initial application again denied ("third ALJ decision"). AR at 625-48. Because Plaintiff, in connection with the subsequent application, was found disabled as of January 1, 2011, ALJ Cordovani limited his consideration of Plaintiff's initial application to the closed period from July 24, 2009, Plaintiff's amended disability onset date asserted with regard to his initial application, through December 31, 2010, the final date before Plaintiff was found disabled under the subsequent application. AR at 640. ALJ Cordovani nevertheless found Plaintiff failed to establish he was disabled during the relevant closed period July

24, 2009 through December 31, 2010, which is now the subject period for purposes of this court's review. On December 21, 2016, Plaintiff filed with the Appeals Council exceptions to the third ALJ decision, AR at 898, but on September 27, 2017, the Appeals Council denied further review, rendering the third ALJ's decision the Commissioner's final decision. AR at 615-19. On November 8, 2017, Plaintiff commenced the instant action seeking judicial review of the third ALJ decision.

On June 18, 2018, Plaintiff filed a motion for judgment on the pleadings (Dkt. 9) ("Plaintiff's Motion"), attaching the Memorandum of Law in Support of Plaintiff's Motion for Judgment on the Pleadings (Dkt. 9-1) ("Plaintiff's Memorandum"). On September 17, 2018, Defendant filed a motion for judgment on the pleadings (Dkt. 14) ("Defendant's Motion"), attaching Defendant's Brief in Support of the Defendant's Motion for Judgment on the Pleadings Pursuant to Local Standing Order on Social Security Cases (Dkt. 14-1) ("Defendant's Memorandum"). On October 9, 2018, Plaintiff filed Plaintiff's Response to Commissioner's Brief in Support and in Further Support for Plaintiff's Motion for Judgment on the Pleadings (Dkt. 15) ("Plaintiff's Reply"). Oral argument was deemed unnecessary.

Based on the following, Plaintiff's Motion is GRANTED; Defendant's Motion is DENIED.

## **FACTS**[3]

Plaintiff Ricky Hopson ("Plaintiff"), born June 19, 1965, was 51 years old as of the administrative hearing before ALJ Cordovani on August 11, 2016. AR at 130. Plaintiff

---

[3] In the interest of judicial economy, recitation of the Facts is limited to only those facts necessary for determining the pending motions for judgment on the pleadings.

5

has a ninth grade education and did not graduate high school, AR at 141, and has past relevant work experience loading machines and as a janitor. AR at 135, 655, 688. Plaintiff never married and lives with four of his five minor children. AR at 37-38.

## DISCUSSION

**1.     Standard and Scope of Judicial Review**

A claimant is "disabled" within the meaning of the Act and entitled to disability benefits when he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 416(i)(1); 1382c(a)(3)(A). A district court may set aside the Commissioner's determination that a claimant is not disabled if the factual findings are not supported by substantial evidence, or if the decision is based on legal error. 42 U.S.C. §§ 405(g), 1383(c)(3); *Green-Younger v. Barnhart*, 335 F.3d 99, 105-06 (2d Cir. 2003). In reviewing a final decision of the SSA, a district court "is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (internal quotation marks and citation omitted). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* It is not, however, the district court's function to make a *de novo* determination as to whether the claimant is disabled; rather, "the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn" to determine

whether the SSA's findings are supported by substantial evidence.  *Id.*  "Congress has instructed . . . that the factual findings of the Secretary,[4] if supported by substantial evidence, shall be conclusive."  *Rutherford v. Schweiker*, 685 F.2d60, 62 (2d Cir. 1982).

## 2.     Disability Determination

The applicable regulations set forth a five-step analysis the Commissioner must follow in determining eligibility for disability benefits.  20 C.F.R. §§ 404.1520 and 416.920.  *See Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir. 1986); *Berry v. Schweiker*, 675 F.2d 464 (2d Cir. 1982).  If the claimant meets the criteria at any of the five steps, the inquiry ceases and the claimant is not eligible for disability benefits.  20 C.F.R. §§ 404.1520 and 416.920.  The first step is to determine whether the applicant is engaged in substantial gainful activity ("SGA") during the period for which the benefits are claimed.  20 C.F.R. §§ 404.1520(b) and 416.920(b).  The second step is whether the applicant has a severe impairment which significantly limits the physical or mental ability to do basic work activities, as defined in the relevant regulations.  20 C.F.R. §§ 404.1520(c) and 416.920(c).  Third, if there is an impairment and the impairment, or its equivalent, is listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 of the regulations ("Appendix 1" or "the Listings"), and meets the duration requirement,[5] there is a presumption of inability to perform SGA and the claimant is deemed disabled regardless of age, education, or work experience.  42 U.S.C. §§ 423(d)(1)(A) and 1382a(c)(3)(A); 20 C.F.R. §§ 404.1520(d) and 416.920(d).  As a fourth step, however, if the impairment

---

[4] Pursuant to the Social Security Independence and Program Improvements Act of 1994, the function of the Secretary of Health and Human Services in Social Security cases was transferred to the Commissioner of Social Security, effective March 31, 1995.
[5] The duration requirement mandates the impairment must last or be expected to last for at least a continuous twelve-month period.  20 C.F.R. §§ 404.1509 and 416.909.

or its equivalent is not listed in Appendix 1, the Commissioner must then consider the applicant's "residual functional capacity" ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding the limitations posed by the applicant's collective impairments, *see* 20 C.F.R. 404.1520(e)-(f), and 416.920(e)-(f), and the demands of any past relevant work ("PRW"). 20 C.F.R. §§ 404.1520(e) and 416.920(e). If the applicant remains capable of performing PRW, disability benefits will be denied, *id.*, but if the applicant is unable to perform PRW relevant work, the Commissioner, at the fifth step, must consider whether, given the applicant's age, education, and past work experience, the applicant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy." *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks and citation omitted); 20 C.F.R. §§ 404.1560(c) and 416.960(c). The burden of proof is on the applicant for the first four steps, with the Commissioner bearing the burden of proof on the final step. 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4); *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008). In the instant case, Plaintiff challenges only that at step four ALJ Cordovani improperly evaluated Plaintiff's right shoulder problem in assessing Plaintiff's RFC and identifying, at step five, jobs Plaintiff could perform, such that Plaintiff was not disabled as defined under the Act between the closed period July 24, 2009 and December 31, 2010, and the undersigned accordingly limits review.

    The ALJ found Plaintiff with the severe impairments of asthma, allergies, left eye blindness, right shoulder impairment, depressive disorder, mild mental retardation, headaches, and obesity. AR at 631-32. Despite these impairments, the ALJ

determined Plaintiff retained the RFC to perform light work[6] with the additional restrictions of occasional overhead work, pushing and pulling with the right arm, frequent handling/fingering with the right hand, as well as nonexertional limitations of no work requiring depth perception, occasionally engaging in tasks requiring near acuity, no work around hazards such as unprotected heights or dangerous moving mechanical parts, avoiding concentrated exposure to fumes, odors, dusts, gases, poor ventilation, and other respiratory irritants, ability to understand, remember, and carry out only simple instructions and tasks, no supervisory duties or independent decision-making, minimal changes in work routine and processes, frequent interaction with supervisors and co-workers, and occasional interaction with the public. AR at 633-34. Based upon a hypothetical posed by the ALJ, the VE testified an individual of Plaintiff's age, education, work experience, and RFC as determined by the ALJ, would be able to perform the jobs of cleaner/housekeeper, photocopy machine operator, and car wash attendant, all jobs of light exertion and existing in significant number in the national economy such that the ALJ found Plaintiff is not disabled. AR at 639-40. This is consistent with the SSA's Medical-Vocational Guidelines ("the Grids"), that a person of Plaintiff's age, 44 as of July 24, 2009, the alleged disability onset date, was a younger individual, with less than a high school education yet able to communicate in English,

---

[6] Per the relevant regulation,
> Light work involves lifting no more than 20 points at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

and with no transferable skills, with RFC for light work, would not be disabled. 20 C.F.R. Pt. 404, Subpt. P, App. 2, Rule 202.17.

The ALJ's inclusion in the hypothetical posed to the VE that Plaintiff can, with his right arm, occasionally work overhead, push and pull, and frequently handle and finger is consistent with the performance of work of a "light" exertion, and all three jobs the VE identified are of "light" exertion. AR at 659. An inability to push and pull, however, would leave Plaintiff only capable of work at the exertional level of "sedentary"[7] such that whether the ALJ properly evaluated Plaintiff's shoulder impairment is of paramount importance. For the following reasons, this determination is not supported by substantial evidence in the record.

Specifically, although it is undisputed that Plaintiff has a right shoulder impairment, AR at 631, in reaching the determination that the shoulder impairment did not result in the inability to perform fine or gross movements effectively and, as such, was not a severe impairment as defined under the Act, AR at 632, the ALJ considered Plaintiff's medical history of right shoulder pain commencing in 2008, yet an August 14, 2008 X-ray of Plaintiff's right shoulder was normal. AR at 353. On October 27, 2008, Plaintiff's treating physician, Bidappa G. Maneyapanda, M.D. ("Dr. Maneyapanda"), reported Plaintiff complained his right shoulder had been painful for a few months, AR at 317, and upon examination, found Plaintiff with tenderness in his AC joint and with weak

---

[7] According to the relevant regulation,
> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a).

10

grip, and assessed possible AC joint arthritis. AR at 318. Upon examination by Dr. Maneyapanda on December 4, 2008, Plaintiff's right shoulder was unchanged, Plaintiff was unable to elevate his right arm beyond 90 degrees, and passive range of motion of the right arm was to 180 degrees with tenderness, there was tenderness with adduction, and Dr. Maneyapanda assessed a possible rotator cuff tear for which he prescribed Lortab, referred Plaintiff for physical therapy, and counseled Plaintiff on stretching. AR at 315-16. On January 5, 2009, Dr. Maneyapanda reported Plaintiff continued to complain of right shoulder pain and requested referral to a specialist. AR at 341. Dr. Maneyapanda instructed Plaintiff to restrict heavy lifting, heat and any other activities involving his right shoulder for six weeks. AR at 342.

On January 23, 2009, upon undergoing a consultative internal medical examination by Jacob Piazza, M.D. ("Dr. Piazza"), Plaintiff's primary complaint was right shoulder pain, which reportedly made it difficult for Plaintiff to use his right upper extremity to lift and carry, or to perform any activity requiring lifting his right arm above shoulder level, including putting his shirt on and off. AR at 332. Plaintiff reported his inability to lift heavy objects caused him to stop working four months earlier, describing his right shoulder pain as "aching," occurring with any type of range of motion ("ROM"), and Plaintiff was unable to raise his right arm above shoulder level. *Id.* Although Plaintiff did not need assistance changing for the examination, Plaintiff was "noted to have difficulty putting his shirt on and off and had to use his left hand for the entire thing." AR at 333. Upon examination, Plaintiff was unable to abduct on the right beyond 60 degrees and forward elevation was limited to 30 degrees. *Id.* at 334. Grip strength on the right was 3/5, Plaintiff was able to tie a shoe string "awkwardly and it did

not come out correctly," and could button with his left hand but not his right. *Id.* at 334-35. Dr. Piazza diagnosed Plaintiff with a right shoulder rotator cuff tear for which the prognosis was fair, attributing Plaintiff's right shoulder problem to "a moderate to marked limitation for use of his right upper extremity for pushing, pulling and any activity where he has to raise it above shoulder level." *Id.* at 335. On a Physical Residual Functional Capacity Assessment completed on March 9, 2009, by one "M. Rock," a Single Decision Maker, Plaintiff was assessed with limitations to reaching in all directions, handling (gross manipulation), and fingering (fine manipulation), with regard to his right upper extremity. AR at 365-70. Dr. Maneyapanda reported Plaintiff with right shoulder pain on July 9, 2010, AR at 610, and "moderate tenderness" with movement of his right shoulder on September 20, 2010, AR at 611. Plaintiff cried during the September 20, 2010 examination and did not want to see a specialist. AR at 612. Significantly, absent from the medical records is any indication that Plaintiff ever regained full use of his right upper extremity.[8]

Defendant's argument, Defendant's Memorandum at 4, that on January 15, 2010, Dr. Maneyapanda cleared Plaintiff to return to work without any restrictions, AR at 592, is not supported by substantial evidence for two reasons including (1) the doctor note referenced by Defendant in support of this assertion is illegible, and (2) even if the doctor note does permit Plaintiff to return to work, it was issued in connection with an ankle injury which Plaintiff does not include in his numerous impairments on which he seeks disability benefits. *See* AR at 591 (Dr. Maneyapanda progress note dated

---

[8] Among the impairments included in assessing Plaintiff's RFC in connection with his subsequent application, which was granted with a disability onset date of January 1, 2011, were restricted use of his upper extremities, including restricted ROM of his right shoulder, and limitations to pushing, pulling and reaching with his right shoulder due to pain. AR at 734-35.

January 15, 2010 indicating Plaintiff was treated for ankle pain after Plaintiff slipped on ice).[9] Insofar as Defendant further argues, Defendant's Memorandum at 4, Plaintiff did not receive any other treatment for his shoulder during the relevant period, Plaintiff testified at the initial administrative hearing on October 21, 2010, that his doctor advised there was a surgical procedure that could be performed, but that it did not always work, and other patients reported the surgery made the situation worse. AR at 51. Plaintiff further explained that three years earlier he underwent unsuccessful surgery on his thyroid. AR at 51-52.

Accordingly, substantial evidence in the record supports a determination that Plaintiff is able to perform, at most, only sedentary work which, based on the Grids, given Plaintiff's age, education, and work history, generally dictates Plaintiff is not disabled. 20 C.F.R. Pt. 404, Subpt. P, App. 2 Rule 201.24. Accordingly, the ALJ's determination that Plaintiff can perform the three jobs identified by the VE, each of which is categorized as "light," is not supported by substantial evidence in the record and requires remand for further consideration at step five as to what, if any, employment Plaintiff can perform given his current RFC. Further, where, as here, Plaintiff, because of nonexertional limitations, is unable to perform the full range of sedentary work, a VE's testimony is required to assess the extent to which such additional work restrictions erodes the occupational base. 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 201.00(h)(3). As such, on remand, the ALJ is directed to obtain further testimony from a VE regarding the impact on the occupational base of sedentary jobs posed by Plaintiff's inability to work overhead, reach, push, pull, handle or finger with his right upper extremity.

---

[9] The court notes this note is given "little weight" in the third ALJ decision because it pertains to an ankle injury. AR at 636.

13

Moreover, mindful of the often painfully slow process by which disability determination are made, the Second Circuit instructs that some evaluation of relative hardship to a claimant of further delay should be considered, *Butts v. Barnhart*, 388 F.3d 377, 387 (2d Cir. 2004), and district courts may therefore "set a time limit for action by the administrative tribunal, and this is often done." *Zambrano v. Califano*, 651 F.2d 842, 844 (2d Cir. 1981). In the instant case, Plaintiff filed his initial application for disability benefits on October 16, 2008, following which there have been three administrative hearings, with the most recent ALJ decision affirmed by the Appeals Council on September 27, 2017. As it has been more than ten years since Plaintiff first filed his initial disability benefits application, further delay for remand is a hardship Plaintiff should not bear. Accordingly, upon remand, the Commissioner is required to complete the additional proceedings related to Plaintiff's claim <u>within</u> <u>120</u> <u>days</u> of the filing of this Decision and Order. *See Dambrowski v. Astrue*, 590 F.Supp.2d 579, 588 (S.D.N.Y. 2008) (imposing 120-day time limit for subsequent proceedings where five years had elapsed since the plaintiff filed his application).

**CONCLUSION**

Based on the foregoing, Plaintiff's Motion (Dkt. 9) is GRANTED; Defendant's Motion (Dkt. 14) is DENIED; the matter is remanded to the Commissioner for further proceedings consistent with this Decision and Order. The Clerk of Court is directed to close the file.

SO ORDERED.

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED: May 23rd, 2019
Buffalo, New York